# Walter *v.* Walter, Appellant.

*Divorce—Desertion—Evidence—Insufficiency.*

A decree of divorce on the ground of desertion will be refused, where there is evidence that the respondent, who had left the libellant on a temporary absence under her physician's orders, had signified her willingness to return to him, and the latter had made no actual test of the good faith of her offer. Under such circumstances, it cannot be said that there was sufficient evidence of an intention to desert.

Argued November 21, 1923. Appeal, No. 294, Oct. T., 1923, by respondent, from decree of C. P. Berks Co., Nov. T., 1921, No. 2, granting a divorce, in the case of Lewis K. Walter v. Lillie E. Walter. Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Reversed.

Libel in divorce. Before BIDDLE, P. J., Ninth Judicial District, specially presiding.

The facts are stated in the opinion of the Superior Court.

The case was referred to Ira G. Kutz, Esq., as master, who recommended that a divorce be granted. On exceptions to the master's report, the court dismissed the exceptions and granted the divorce. Respondent appealed.

*Error assigned* was, among others, the decree of the court.

*John M. Patterson,* of *Wolf, Patterson, Block & Schorr,* and with him *Michael C. Goglia,* for appellant.

*Paxson Deeter,* of *Bell, Kendrick, Trinkle & Deeter,* and with him *Rothermel & Mauger,* for appellee.

OPINION BY TREXLER, J., March 14, 1924:

The husband, Lewis K. Walter, asks for a divorce from his wife Lillie E. Walter, upon the ground of desertion. Both the master and the lower court favored the granting of the divorce. After a careful consideration of the testimony, we come to a contrary conclusion. The parties were married in 1897 and lived together until September 3, 1919. It will be unnecessary to review the differences which arose between them. The wife left the husband on September 3, 1919, and went to her niece at Newtown Square. This was done, so the respondent says, at the advice of a physician and support is given to her statement by the physician who testified that he had advised that "a temporary change of environment and possibly a change of scenery and town and surroundings for a period of a few weeks might do her good." There is testimony that the husband made the arrangements for her stay in Newtown Square, engaged her board and paid it and had stated that the doctor had advised her to stay away a couple of months until she was straightened out. At this time she was passing her climacteric. The wife left their common domicile and took her goods away, but the actions of both of these parties during her sojourn at her niece's lend color to her story that the absence was for a special purpose and only to be for a time. He visited her week ends after their separation, arriving usually on Saturday and staying until Monday and on some of these occasions he took back some of the things which she had taken away. Finally during one of these week end visits on the way down he found his wife in Philadelphia at the house of a cousin. To his request to have her go with him, she told him she was not going back (evidently referring to Newtown Square) with him; that she had some business in Philadelphia, the nature of which she declined to disclose, he then said: "this is the last time I am coming down." He then went to Newtown Square and stayed there until Monday morning, but she did not appear. This was his

last visit to his wife.  On a number of occasions when they were together during her sojourn at Newtown Square they occupied the same bed and had intercourse and this was so on the visit preceding the last.  He testifies that on this occasion he told his wife, "it was pretty near time for her to come back," evidently recognizing the fact that her stay was for a purpose, the regaining of her health, and was to be merely temporary, and to some extent uncertain as to its duration.  We have stated that he did not go to see his wife after November 9, 1919.  On January 2, 1920, she wrote the following letter: "Dear Husband: In your last letter you wrote me you said when I was ready to return to Birdsboro you would come down and take me back with you.  The Dr. told you it would be advisable to stay away about three months.  So let me know when you will be down.  From your wife Lillie."  The master found that this letter was not made in good faith.  It must be remembered that the desertion must not only be wilful and malicious, but must be persisted in for two years; that even if a wife had no just cause to desert, she has a time given her under the law to repent and return to her husband.  This offer which the wife made to return was not made near the end of two years; then it might have been considered merely for the purpose of preventing the husband getting a divorce.  It was only a short time, less than two months after the husband visited her, that she wrote this letter.  If he was as anxious to have her back as he states, he should have answered her letter.  There may be a doubt as to her sincerity, but as to his willingness to let her stay where she was, there can be none.  The conduct of the parties during his visits negatives any intent on the part of either to permanently desert the other.  He testified that his wife expected him down every week end and as was said before they occupied the same bed.  If we take these two facts together that her leaving was at the advice of a physician and was to be merely temporary and that her letter is consistent with such ar-

14, (1924).]　　　　Opinion of the Court.

rangement, we come to the conclusion it was incumbent on the husband not to stand aloof, but to accept her offer. The actual interruption of their married life was short and the circumstances were such as put upon him the duty of testing the bona fides of her proposal to resume marital relations.

The decree is reversed. The libel is dismissed. The appellee to pay the costs.